**HILL, FARRER & BURRILL LLP**
E. Sean McLoughlin (Bar No. 174076)
  Email: smcloughlin@hillfarrer.com
Michael S. Blanton (Bar No. 190148)
  Email: mblanton@hillfarrer.com
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA  90071-3147
Telephone:  (213) 620-0460
Fax:  (213) 624-4840

Attorneys for Defendants
MARTIN STEIN and BLACKFORD
CAPITAL ASSOCIATES II, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT – OAKLAND

| | |
|---|---|
| ANTHONY P. KIEHN, an individual; FORTIS PACIFIC, INC., a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>MARTIN STEIN, an individual; BLACKFORD CAPITAL ASSOCIATES II, INC., a Michigan Corporation, also d.b.a. BLACKFORD CAPITAL; JOHN H. MASON, an individual, an individual; CONVERGENT CAPITAL, LLC, a Minnesota Company; CONVERGENT CAPITAL II, LLC, a Delaware Company; CONVERGENT CAPITAL PARTNERS I, LP; a Delaware Company; CONVERGENT CAPITAL PARTNERS II, LP; a Delaware Company,<br><br>Defendants. | CASE NO.  CV 12-06554 PJH<br><br>**NOTICE OF MOTION & HEARING OF PETITION TO COMPEL ARBITRATION AND DISMISS FIRST AMENDED COMPLAINT OR STAY ACTION; MEMORANDUM IN SUPPORT**<br><br>Date:     April 17, 2013<br>Time:    9:00 a.m.<br>Judge:   Hon. Phyllis J. Hamilton |

1

# NOTICE OF MOTION, HEARING AND RELIEF SOUGHT

**TO THE COURT, PLAINTIFFS, DEFENDANTS AND ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on April 17, 2013, at 9:00 a.m., or as soon thereafter as the matter may be heard in the above-entitled Court, located at 1301 Clay Street, Oakland, CA 94612, Defendants and Petitioners Martin Stein ("Stein") and Blackford Capital Associates II, Inc. ("Blackford-II) will have heard their Petition to Compel Arbitration and will move this Court for an order compelling Plaintiffs Anthony P. Kiehn ("Kiehn") and Fortis Pacific, Inc. ("Fortis") (together, "Plaintiffs") to submit their claims in this action and the First Amended Complaint ("FAC") against Defendants to binding arbitration before the American Arbitration Association and dismissing those claims or staying the above-entitled action pending completion of the arbitration proceedings so ordered.

The motion is made upon the grounds that all of Plaintiffs' claims asserted in the FAC are subject exclusively to binding arbitration as required by Section 16.14 of the Amended & Restated Operating Agreement of Blackford Capital Associates, LLC. Stein and Blackford-II have previously requested that Plaintiffs, through their counsel, comply with the arbitration agreement, but Plaintiffs did not concur. Stein and Blackford-II therefore move this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 2-4, and Fed. R. Civ. P. 12(b)(6), for an order dismissing, or in the alternative, staying this action and compelling all parties to submit to the agreed upon binding arbitration process. This motion is based upon Stein and Blackford-II's previously filed and serve Petition, this Notice, the following Memorandum in Support, the accompanying Declarations of Martin Stein and L. Pahl Zinn, and Exhibits A through C, as well as the papers, records, and documents on file, and such oral and documentary evidence as may properly be presented at or before the hearing.

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Anthony P. Kiehn ("Kiehn") and Fortis Pacific, Inc. ("Fortis")[1] (collectively, "Plaintiffs") bring this action against Martin Stein ("Stein"), Blackford Capital Associates II, Inc. ("Blackford-II"),[2] John H. Mason ("Mason"), Convergent Capital, LLC, Convergent Capital II, LLC, Convergent Capital Partners I, LP, and Convergent Capital Partners II, LP (collectively, the "Convergent Companies"),[3] for damages allegedly arising out of Kiehn and Stein's foundation and operation of the private equity investment firm Blackford Capital Associates, LLC ("Blackford-I"),[4] and Stein's subsequent creation of the investment firm Blackford-II.

Stein and Blackford-II seek to compel arbitration and dismiss or stay this action pending the conclusion of arbitration because Kiehn and Stein are signatories to the Amended & Restated Operating Agreement of Blackford Capital Associates, LLC dated August, 2008 (the "Operating Agreement"). **Exhibit A**.[5] Section 16.14 of the Operating Agreement requires <u>mandatory</u> arbitration for <u>any</u> disputes involving provisions of the Operating Agreement, and all <u>"other" disputes</u> among the members of Blackford-I. In addition, because all of Defendants' allegedly wrongful acts are related to disputes between Kiehn and Stein that touch upon the terms of Operating Agreement, the Operating Agreement's arbitration provision should apply to <u>all</u> parties to this action. Thus, this Court should compel the parties to arbitrate Plaintiffs' claims and dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6). Alternatively, the Court may stay this litigation until the conclusion of

---

[1] Kiehn alleges that he is the managing director and owner of Fortis. (Exh. B at ¶ 8).
[2] In their First Amended Complaint, Plaintiffs refer to Blackford Capital Associates II, Inc. as "Blackford-Two."
[3] For ease of reference, and where appropriate, Stein, Blackford-II, Mason and the Convergent Companies might be referred to collectively as "Defendants."
[4] In their FAC, Plaintiffs refer to Blackford Capital Associates, LLC as "Blackford-One."
[5] The Court may consider documents outside of the pleadings in support of a motion to dismiss if the document is referenced in plaintiff's complaint and is "central" to plaintiff's claim. *See Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (9th Cir. 1993).

the arbitration proceeding.

## II. STATEMENT OF ISSUES TO BE DECIDED

Defendants' Petition asks the Court to determine the following issues:

Did Plaintiff Kiehn enter into an agreement with Defendant Stein to resolve disputes exclusively through binding arbitration?

If so, are the claims alleged in this action by Plaintiffs within the broad scope of claims that are required be arbitrated under the applicable arbitration provision of the Blackford Operating Agreement?

If the merits of the claims must be decided in arbitration, then should the Court dismiss the action for lack of subject matter jurisdiction over the merits of the dispute and because the Plaintiffs cannot state claims in this Court upon which relief may be awarded?

## III. FACTUAL BACKGROUND

In March of 2006, Kiehn and Stein founded Blackford-I, a private equity investment firm. Kiehn and Stein are the sole members of Blackford-I, which is in the business of acquiring and managing manufacturing, distribution, and service companies. Part of Blackford-I's business model is to seek out limited partners to invest in various "Portfolio Companies." On March 15, 2006, Kiehn and Stein executed an Operating Agreement. The Operating Agreement was amended and restated on or about August 2008, and contains the following mediation and arbitration provision:

> (a) In <u>any</u> dispute over the provisions of this Agreement <u>and in other disputes among the Members</u>, if the Members cannot resolve the dispute to their mutual satisfaction, the matter shall be submitted to mediation. The terms and procedure for mediation shall be arranged by the parties to the dispute.
>
> (b) If good-faith mediation of the dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the Members who are parties to the dispute, the disputes shall be settled by binding arbitration . . .

(**Exh. A**, ¶ 16.14) (emphasis added).

- 2 -

By early 2012, Kiehn and Stein's business relationship began to break down. The two members could not agree on the direction of Blackford-I, they were unable to agree on how to infuse capital into certain Portfolio Companies, and Stein became increasingly dissatisfied with Kiehn's management style.

With these growing differences Kiehn and Stein attempted an amicable resolution through an informal mediation. For the first six months of 2012, the two members exchanged numerous emails and telephone calls in an effort to resolve their differences. After these failed mediation attempts, Plaintiffs filed this action on December 28, 2012, without first seeking to arbitrate their claims as required by the Operating Agreement.

In response to Plaintiffs' original Complaint, Stein and Blackford-II filed their first Petition to Compel Arbitration and Dismiss or Stay Action (*see* Dkt. No. 17) and Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (*see* Dkt. No. 15). Twenty-one days later, Plaintiffs filed their First Amended Complaint. Stein and Blackford-II are simultaneously moving for the dismissal of the First Amended Complaint, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6).

In their First Amended Complaint, Plaintiffs allege that Stein formed another private equity investment firm, Blackford-II, based out of Grand Rapids, Michigan, in May of 2010. Plaintiffs further allege that Stein, Blackford-II, Mason and the Convergent Companies took concerted actions to misappropriate assets and opportunities belonging to Plaintiffs, to disparage Kiehn, and to trade on Kiehn's name without Kiehn's consent. **Exhibit B**, ¶ 4. The central allegations[6] of

---

[6] Plaintiffs' FAC asserts the following claims: Count I – Unfair Competition under the Lanham Act, 15 U.S.C. § 1125 (against all Defendants); Count II – Unfair Competition under California Business and Professions Code § 17200 *et seq*. (against all Defendants); Count III – Breach of Contract (against Stein); County IV – Conversion (against Stein and Blackford-II); Count V – Concealment (against Stein and Blackford-II); Count VI – Breach of Fiduciary Duty (against Stein); Count VII – Breach of Covenant of Good Faith and Fair Dealing (against Stein); Count VIII – Defamation (against all Defendants); Count IX – Intentional Interference with Prospective Economic Advantage (against all Defendants); Count X – Negligent Interference with Prospective Economic Advantage (against all Defendants); Count XI – Intentional Interference with Contractual Relations (against all Defendants); and Count XII – Conspiracy (against all Defendants).

Plaintiffs' First Amended Complaint are:

- Stein "has used, and continues to use, the similarity in name between BLACKFORD-TWO and Blackford-One so that BLACKFORD-TWO and STEIN can misappropriate opportunities and benefits which belong to Blackford-One" and "mislead people dealing with Blackford-TWO to believe they are dealing with Blackford-One." (**Exh. B, ¶¶ 43-44**).

- Defendants have "made false and misleading statements about KIEHN to people connected with and near to the Portfolio Companies and the private equity and investment community" and that by doing so, Stein is harming Kiehn's professional standing and reputation. (**Exh. B, ¶¶ 88, 91**).

- With the assistance of Mason and the Convergent Companies, Stein has conducted investments adverse to Blackford-I's limited partners and impeded the management and capitalization of Blackford-I's Portfolio Companies. (**Exh. B, ¶¶ 53, 59-61**).

- Stein and Blackford-II changed certain Management Services Agreements between Blackford-I and various Portfolio Companies without consulting Kiehn and Fortis. (**Exh. B at ¶ 81**).

As set forth below, each of these allegations, regardless of how they are plead in Plaintiffs' FAC, arise out of the Operating Agreement and are within the scope of Section 16.14's arbitration provision.

## IV. ARGUMENT

### A. Federal policy strongly favors the enforcement of arbitration agreements.

Congress enacted the Federal Arbitration Act ("FAA") to guarantee the enforceability of arbitration agreements and prevent parties from avoiding contractual obligations to arbitrate. *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 219 (1985). Section 2 of the FAA is the primary substantive provision of the Act and provides that a written agreement to arbitrate in any contract "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable,

- 4 -

save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). As such, a district court is obligated to compel arbitration in accordance with the terms of an enforceable arbitration agreement:

- A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement . . . the court <u>shall make an order</u> summarily directing the parties to proceed with the arbitration in accordance with the terms thereof.

9 U.S.C. § 4 (emphasis added).

"By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter*, 470 U.S. at 218. Thus, federal policy strongly favors arbitration and courts have rigorously enforced written agreements to arbitrate. As explicitly provided in 9 U.S.C. § 2, courts will only decline to enforce an arbitration agreement if a party presents grounds for revocation of the contractual agreement. *See Dean Witter*, 470 U.S. at 218. Here, Plaintiffs specifically seek to enforce the Operating Agreement by alleging a claim for breach of contract (Count III), and thus do not seek to revoke the agreement.

### B. **Plaintiffs' claims fall within the scope of the valid and enforceable arbitration provision in the Operating Agreement and Plaintiffs should be compelled to arbitrate those claims.**

When determining whether parties should be compelled to arbitrate, a court's analysis under the FAA is limited to two inquiries: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

- 5 -

encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999). With regard to the second inquiry, courts are inclined to broadly construe the scope of an arbitration agreement. *Marchese v. Shearson Hayden Stone, Inc.*, 734 F.2d 414, 419 (9th Cir. 1984). Indeed, the Supreme Court has held that the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. The only circumstances in which a dispute can be excepted from arbitration is when it can be stated "with positive assurance" that the controversy falls outside the scope of the arbitration clause. *Marchese*, 734 F.2d at 419 (citing *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960)).

Like their original Complaint, the FAC unequivocally embraces the Operating Agreement as all allegations are within its framework. As such, the Court should grant this motion and compel Plaintiffs to arbitrate their claims.

### 1. **A valid and enforceable arbitration agreement exists between Kiehn and Stein.**

As previously stated, Kiehn and Stein entered into an Operating Agreement for Blackford-I. There is no allegation in the First Amended Complaint that the Operating Agreement is unenforceable, and as such, there is no dispute that it includes a valid and broad arbitration provision. Indeed, Kiehn and Stein operated Blackford-I under the terms of the Operating Agreement, even going so far as to amend and restate it in March, 2008.

Section 16.14 is a valid and enforceable arbitration provision under both the

- 6 -

FAA and California law.[7]  By executing the Operating Agreement, Kiehn and Stein unequivocally evidenced their intent to arbitrate <u>any</u> disputes arising out of the Operating Agreement or between them.  Kiehn cannot circumvent the valid and enforceable obligation to arbitrate, for which he and Stein bargained in their Operating Agreement.

### 2. The claims asserted by Plaintiffs are arbitrable and within the scope of the arbitration provision.

Because of the strong federal policy in favor of resolving disputes through arbitration, there is a strong presumption in favor of arbitrating all disputes reasonably within the scope of an arbitration clause.  *Pacificare Health Sys., Inc. v. Book*, 538 U.S. 401, 407 n.2 (2003).  Again, any doubts concerning the arbitrability of a matter are to be resolved in favor of arbitration.  The Ninth Circuit has held that "[t]o require arbitration, [an aggrieved party's] factual allegations need only 'touch matters' covered by the contract containing the arbitration clause . . . ."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999).  Moreover, the inclusion of a broad arbitration provision evidences the parties' intent to have all disputes arising out of the agreement submitted to arbitration.  *Id*. at 720-21.  This presumption in favor of arbitrability also extends to statutory claims.  *See Mitsubishi Motors Corp., v. Soler-Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985).

In *Simula, Inc. v. Autoliv, Inc.*, the Ninth Circuit addressed the scope of a broad arbitration provision contained within a licensing agreement between two automotive suppliers.  In that case, the arbitration provision provided: "All disputes arising in connection with this Agreement shall be finally settled under

---

[7] Mirroring the language of § 2 of the FAA, Cal. Code. Civ. Proc. § 1281 provides: "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract."

- 7 -

the Rules of Conciliation and Arbitration of the International Chamber of Commerce . . . ." *Id.* at 720.  Emphasizing "the emphatic federal policy in favor of arbitral dispute resolution" and applying the concepts above, the Ninth Circuit held that all of the plaintiff's claims against the defendant, including plaintiff's Lanham Act and defamation claims, fell within the scope of the arbitration provision.

      Section 16.14 is just as broad, if not broader, than the arbitration provision in *Simula*.  It covers all "disputes over the provisions of the Operating Agreement," and any "other disputes among the Members."  The gravamen of Plaintiffs' First Amended Complaint is that Stein, working through Blackford-II (*see* **Exh. B** at ¶¶ 52, 67) and with the assistance of Mason and the Convergent Companies, have worked to divert business opportunities and revenues from Blackford-I to Blackford-II, and that Stein's actions have been detrimental to Kiehn's interest as a member of Blackford-I.  These allegations arise directly from Kiehn's and Stein's membership in Blackford-I, and therefore have their origin in the Operating Agreement.  Plaintiffs explicitly allege: "According to the operating agreement of Blackford-One . . . all acts of STEIN that are done in bad faith and that may cause or result in loss or damage to KIEHN, shall subject STEIN to liability towards KIEHN."  (**Exh. B** at ¶ 26;*see also* **Exh. B** at ¶¶ 189, 211, 218, 225) (alleging that Stein <u>and</u> Blackford-II acted in violation of their fiduciary and contractual duties to Kiehn.).  Thus, despite the myriad of claims asserted by Plaintiffs, all of them, including Plaintiffs' Lanham Act and tort claims, fall within the scope of the arbitration provision because they "touch matters" covered by the Operating Agreement.  And they certainly constitute "other disputes" between the Members of Blackford-I.  Based upon the broad and clear terms of the arbitration provision, Plaintiffs' claims must be submitted to arbitration, and this Petition should be granted.

### C. The claims asserted by and against nonsignatories to the Operating Agreement are also arbitrable because they are intertwined with the alleged contractual obligations thereunder and conduct of the signatories to that contract.

Plaintiffs allegations establish that each of the claims asserted by Fortis and asserted against Blackford-II, Mason and the Convergent Companies are arbitrable, notwithstanding the fact that none of those parties are signatories to the Operating Agreement containing the express agreement to arbitrate. The Ninth Circuit and its district courts have recognized that in certain circumstances, such as those alleged here in the First Amended Complaint, nonsignatories to the arbitration agreement can both compel and be compelled to arbitration.

#### 1. Fortis' claims must be arbitrated because its claims are intertwined with the Operating Agreement, which provides for arbitration.

A nonsignatory may be bound by an agreement to arbitrate under ordinary contract and agency principles, including estoppel. *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006). "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Id*. As such, a nonsignatory will be held to an arbitration agreement "where the nonsignatory 'knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement.'" *Id*. (quoting *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 199 (3d Cir. 2001)). Important factors in determining whether a nonsignatory should be compelled to arbitrate on the basis of estoppel include: (1) whether the subject matter of the dispute is intertwined with the contract providing for arbitration, and (2) whether the nonsignatory's relationship to the signatories is of a nature that justifies compelling it to arbitrate. *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1046-47 (9th Cir. 2009).

Here, each of these factors are evident as to Fortis's claims against the Defendants, thus its claims must be arbitrated.

First, Plaintiffs contend that Fortis is a beneficiary of Blackford-I's original Management Services Agreements (*see, e.g.*, **Ex. B** at ¶ 81). Second, Plaintiffs also contend that Fortis has rights under the Operating Agreement that are commensurate with Kiehn's and have been violated due to Stein's alleged alteration of the Management Services Agreements with Portfolio Companies:

> STEIN and BLACKFORD-TWO have made these changes without authorization, knowledge and/or consent of KIEHN and FORTIS. STEIN has made these changes while concealing them from KIEHN and FORTIS, and KIEHN and FORTIS did not know of these changes to the Management Services Agreements, and KIEHN and FORTIS would not have consented to those changes.

(**Exh. B** at ¶ 81).

Fortis's claims allegedly arise entirely out of Kiehn's and Stein's respective positions and disputes as members of Blackford-I and signatories to the Operating Agreement. Plaintiffs alleged that Kiehn is the owner and managing director of Fortis. (**Exh. B** at ¶ 8). Plaintiffs do not allege any relationship, much less duty owed, between Fortis, specifically, and any Defendant. Rather, each claim asserted by Fortis relates directly to Kiehn and Stein's respective rights and obligations to one another under the Operating Agreement. Outside the citizenship allegations in ¶ 7, the First Amended Complaint contains only two allegations that make reference to Fortis without also making reference to Kiehn; both allegations are conclusory statements that Fortis has been harmed and is entitled to relief. (**Ex. B** at ¶¶ 145, 149). There is no allegation of any right or claim solely on behalf of Fortis. The only harm to Fortis alleged in the First Amended Complaint is, in effect, the same harm alleged as to Kiehn, imputed to Fortis by virtue of the relationship between the two Plaintiffs.[8] Fortis's claims are thus deeply

---

[8] Because the First Amended Complaint fails to distinguish any meaningful difference between Kiehn and Fortis, such that the Plaintiffs' relationship is of a nature that justifies compelling Fortis to arbitrate its putative claims. Indeed, Fortis's scant allegations fail to state a

- 10 -

intertwined with Kiehn's rights under the Operating Agreement, and are therefore subject to arbitration.

### 2. Plaintiffs' claims against Blackford-II are indistinguishable from those asserted against Stein, and therefore must be arbitrated.

Nonsignatory defendants can also compel a signatory plaintiff to arbitrate its claims based on the principle of equitable estoppel. Equitable estoppel applies and supports a nonsignatories right to compel arbitration when either: (1) the signatory's claims against a nonsignatory arise out of the underlying contract; or (2) the nonsignatory's conduct is intertwined with a signatory's conduct. *See Amisil Holdings, Ltd. v. Clarium Capital Mgmt. LLC*, 622 F. Supp. 2d 825, 830 (N.D. Cal. 2007); *see also, Comer*, 436 F.3d at 1101. Both circumstances exist for, and compel the arbitration of, the claims asserted against Blackford-II.

As to the former, "a nonsignatory may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Jones v. Jacobson*, 195 Cal. App. 4th 1, 20 (2011). The signatory must rely on the terms of the written agreement containing the arbitration clause in asserting its claims against the nonsignatory. *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 218 (2009).

In this case, Plaintiffs expressly allege that Blackford-II, together with Stein, "acted in violation of their fiduciary and contractual duties towards Kiehn . . . ." (**Exh. B** at ¶¶ 211, 218, 225). Plaintiffs similarly allege that Stein and/or Blackford-II "planned to and did commit . . . breach of contract . . . [and] breach of covenant of good faith and fair dealing . . . ." (**Exh. B** at ¶ 234). Plaintiffs do not allege any basis for any fiduciary or contractual duty Blackford-II may (or could)

plausible claim upon which relief can be granted against any Defendant. The sufficiency of Fortis's pleadings, however, are addressed more fully in Defendants Stein and Blackford-II's Motion to Dismiss, filed contemporaneously with this Motion.

- 11 -

owe to Kiehn other than the Operating Agreement. Accordingly, Kiehn's claims against Blackford-II rely, at least in part, on the Operating Agreement, and are otherwise intimately founded in and intertwined with contractual obligations and terms thereunder.

Blackford-II is also entitled to compel arbitration because the alleged conduct of Blackford-II is not only intertwined with, but indistinguishable from, the alleged conduct of Stein. Equitable estoppel applies where a signatory raises allegations of substantially interdependent and concerted misconduct by both a nonsignatory and a signatory. *Goldman*, 173 Cal. App. 4th at 222, 222 at n. 7. All claims asserted against Blackford-II are asserted in conjunction with identical claims against Stein. Further, all references to Blackford-II in the First Amended Complaint make reference to it together with Stein. Indeed, Plaintiffs do not allege a single act by Blackford-II that was not allegedly carried out by Stein. The misconduct ascribed to Blackford-II in the First Amended Complaint is not merely interpendent and concerted with the alleged conduct of Stein – according to the averments in the First Amended Complaint, it is the conduct of Stein.

### 3. **Mason and the Convergent Companies should be compelled to arbitrate because they are beneficiaries of the Operating Agreement and Plaintiffs' claims are directly related to the dispute between Kiehn and Stein.**

Plaintiffs allege that Mason and Convergent Companies acted in concert with Stein and Blackford-II to misappropriate investment opportunities, to impede capital restructuring of the Portfolio Companies, and to otherwise harm Plaintiffs' interests in Blackford-I. (**Exh. B** at ¶¶ 4, 111).

Like those asserted against Blackford-II, the claims against Mason and the Convergent Companies claims are arbitrable. Those claims arise out of the contractual obligations under the Operating Agreement because Mason and the

- 12 -

Convergent Companies are limited partners in one or more Portfolio Companies held by Blackford-I. (**Exh. B** at ¶ 110). Further, as limited partners in Portfolio Companies, Mason and the Convergent Companies have a relationship with Kiehn and Stein that justifies compelling them to arbitrate. As stated above, the misconduct alleged against Mason and the Convergence Companies is that each worked together and in concert with Stein and Blackford-II to divert business opportunities and revenue from Blackford-I. Thus, the First Amended Complaint facially alleges interdependent and concerted activity with Stein, a signatory, and should therefore be arbitrated in its entirety in accordance with the terms of the Operating Agreement.

**D. Because Plaintiffs' claims are subject to arbitration, the Court should dismiss Plaintiffs' claims, or alternatively, stay this proceeding until arbitration is concluded.**

"Although the Federal Arbitration Act 'provides for a stay pending compliance with a contractual arbitration clause . . . a request for a stay is not mandatory.'" *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) (quoting *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.,* 586 F.2d 143, 147 (9th Cir. 1978)).[9] Importantly, the Ninth Circuit has affirmed dismissal of such claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(6). *See Thinket Ink Info. Res.*, at 1060 ("Nor did the district court err in dismissing the plaintiffs' claims that were subject to arbitration pursuant to Fed. R. Civ. P. 12(b)(6)."); *Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723-725 (9th Cir. 2000) ("Chappel's claim for direct judicial review of the Plan's benefits determination is barred by the Plan's valid and enforceable arbitration clause. The district court properly dismissed his complaint under Federal Rule of Civil Procedure § 12(b)(6) for failure to state a claim."). Given the valid and

---

[9] If the Court declines to grant this Petition to Compel Arbitration, Stein and Blackford-II have filed a concurrent Motion to Dismiss pursuant to Fed. R. Civ. P 12(b)(6) as its first responsive pleading to Plaintiffs' First Amended Complaint.

- 13 -

enforceable arbitration agreement between Kiehn and Stein, the Court is required by the FAA to compel Plaintiffs to arbitrate. Plaintiffs cannot seek judicial review of their claims, and therefore cannot state a claim for relief. For these reasons, the Court should dismiss Plaintiffs' claims under Fed. R. Civ. P. 12(b)(6).

Alternatively, Stein and Blackford-II request that the Court stay all matters in this lawsuit pending resolution of this Petition, and if granted, until the parties have arbitrated Plaintiffs' claims. Upon a finding by the Court that the controversy at issue is subject to a valid arbitration agreement, Section 3 of the FAA authorizes the Court to "stay the trial of the action until such arbitration has been had" if petitioned to so by one of the parties. 9 U.S.C. § 3. As explained above, Kiehn and Stein unmistakably expressed their intent to arbitrate their disputes via the arbitration provision of the Operating Agreement. If the Court declines to dismiss Plaintiffs' claims, the Court should stay this proceeding pending the outcome of this Petition, and if granted, the arbitration. At the conclusion of the arbitration, the parties could then seek to enforce in this Court. (**Exh. A** § 16.14(b)).

## V. CONCLUSION

For the foregoing reasons, all parties should be compelled to arbitrate Plaintiffs' claims in this litigation, and this action should be dismissed or stayed until arbitration proceedings are concluded.

Respectfully submitted this 8th day of February, 2013.

By  /s/ E. Sean McLoughlin
E. Sean McLoughlin (Bar No. 174076)
Michael S. Blanton (Bar No. 190148)
HILL, FARRER & BURRILL LLP
One California Plaza, 37th Floor
300 South Grand Avenue
Los Angeles, CA 90071
Telephone: (213) 620-0460
Email: smcloughlin@hillfarrer.com
Email: mblanton@hillfarrer.com

NOTICE OF HEARING OF PETITION TO COMPEL ARBITRATION AND DISMISS OR STAY ACTION; MEMORANDUM IN SUPPORT

and

/s/ Peter H. Webster
Peter H. Webster (MI Bar No. P48783)
L. Pahl Zinn (MI Bar No. P57516)
Patrick G. Green (MI Bar No. 68759)
DICKINSON WRIGHT PLLC
500 Woodward Ave, Suite 4000
Detroit, MI 48226
Telephone: (313) 223-3500
pwebster@dickinsonwright.com
pzinn@dickinsonwright.com
pgreen@dickinsonwright.com

*Admitted Pro Hac Vice (pending)*

Attorneys for Defendants Martin Stein and Blackford Capital Associates II, Inc.

DETROIT 53057-1 1275841v2

# **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................... - 1 -
II.  STATEMENT OF ISSUES TO BE DECIDED ........................................ - 2 -
III. FACTUAL BACKGROUND ...................................................................... - 2 -
IV.  ARGUMENT ................................................................................................. - 4 -
    A.  Federal policy strongly favors the enforcement of arbitration agreements ............................................................................................... - 4 -
    B.  Plaintiffs' claims fall within the scope of the valid and enforceable arbitration provision in the Operating Agreement and Plaintiffs should be compelled to arbitrate those claims .......... - 5 -
        1.  A valid and enforceable arbitration agreement exists between Kiehn and Stein ................................................................ - 6 -
        2.  The claims asserted by Plaintiffs are arbitrable and within the scope of the arbitration provision ................................... - 7 -
    C.  The claims asserted by and against nonsignatories to the Operating Agreement are also arbitrable because they are intertwined with the alleged contractual obligations thereunder and conduct of the signatories to that contract .............................. - 9 -
        1.  Fortis' claims must be arbitrated because its claims are intertwined with the Operating Agreement, which provides for arbitration ........................................................... - 9 -
        2.  Plaintiffs' claims against Blackford-II are indistinguishable from those asserted against Stein, and therefore must be arbitrated ................................................. - 11 -
        3.  Mason and the Convergent Companies should be compelled to arbitrate because they are beneficiaries of the Operating Agreement and Plaintiffs' claims are directly related to the dispute between Kiehn and Stein ..... - 12 -
    D.  Because Plaintiffs' claims are subject to arbitration, the Court should dismiss Plaintiffs' claims, or alternatively, stay this proceeding until arbitration is concluded ........................................ - 13 -
V.   CONCLUSION ........................................................................................... - 14 -

- i -

# TABLE OF AUTHORITIES

**Page**

**CASES**

Amisil Holdings, Ltd. v. Clarium Capital Mgmt. LLC,
  622 F. Supp. 2d 825 (N.D. Cal. 2007)...................................................................... 11

Chappel v. Lab. Corp. of America,
  232 F.3d 719 (9th Cir. 2000) ................................................................................... 13

Chiron Corp. v. Ortho Diagnostic Sys.,
  207 F.3d 1126 (9th Cir. 2000) ................................................................................... 5

Comer v. Micor, Inc.,
  436 F.3d 1098 (9th Cir. 2006) ............................................................................. 9, 11

Dean Witter Reynolds Inc. v. Byrd,
  470 U.S. 213 (1985) .............................................................................................. 4, 5

E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates,
  269 F.3d 187 (3d Cir. 2001) ...................................................................................... 9

Goldman v. KPMG LLP,
  173 Cal. App. 4th 209 (2009) ............................................................................ 11, 12

Jones v. Jacobson,
  195 Cal. App. 4th 1 (2011) ...................................................................................... 11

Marchese v. Shearson Hayden Stone, Inc.,
  734 F.2d 414 (9th Cir. 1984) ..................................................................................... 6

Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.,
  586 F.2d 143 (9th Cir. 1978) ................................................................................... 13

Mitsubishi Motors Corp., v. Soler-Chrysler-Plymouth, Inc.,
  473 U.S. 614 (1985) .................................................................................................. 7

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
  460 U.S. 1 (1983) ................................................................................................... 5, 6

Mundi v. Union Sec. Life Ins. Co.,
  555 F.3d 1042 (9th Cir. 2009) ................................................................................... 9

Pacificare Health Sys., Inc. v. Book,
  538 U.S. 401 (2003) .................................................................................................. 7

Simula, Inc. v. Autoliv, Inc.,
  175 F.3d 716 (9th Cir. 1999) .................................................................................. 6, 7

Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.,
  368 F.3d 1053 (9th Cir. 2004) ................................................................................. 13

United Steelworkers of America v. Warrior & Gulf Navigation Co.,
  363 U.S. 574 (1960) .................................................................................................. 6

Venture Assoc. Corp. v. Zenith Data Sys. Corp.,
  987 F.2d 429 (9th Cir. 1993) ..................................................................................... 1

HILL, FARRER & BURRILL LLP
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147

# TABLE OF AUTHORITIES
## (continued)

**Page**

### STATUTES

9 U.S.C. § 2 ........................................................................................................... 5  
9 U.S.C. § 3 ......................................................................................................... 14  
9 U.S.C. § 4 ...................................................................................................... 4, 5  
9 U.S.C. §§ 2-4 ..................................................................................................... 2  
Cal. Code. Civ. Proc. § 1281 ............................................................................... 6  
California Business and Professions Code § 17200 ........................................... 3  
Federal Rules of Civil Procedure § 12(b)(6) ......................................... 2, 13, 14  
Lanham Act, 15 U.S.C. § 1125 ............................................................................ 3

**HILL, FARRER & BURRILL LLP**
A LIMITED LIABILITY PARTNERSHIP
ATTORNEYS AT LAW
ONE CALIFORNIA PLAZA, 37TH FLOOR
300 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-3147