UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTHONY P. KIEHN, et al.,

    Plaintiffs,

    v.

MARTIN STEIN, et al.,

    Defendants.

_____/

No. C 12-6554 PJH

**ORDER RE MOTION TO COMPEL ARBITRATION AND MOTIONS TO DISMISS**

    Before the court are three motions: (1) a motion to compel arbitration, filed by defendants Martin Stein and Blackford Capital II, Inc. (together, the "Stein defendants"); (2) a motion to dismiss under Rule 12(b)(6), filed by the Stein defendants; and (3) a motion to dismiss under Rule 12(b)(6), filed by defendants Convergent Capital II LLC, Convergent Capital Partners I LP, Convergent Capital Partners II LP, Convergent Capital LLC (a Delaware company), Convergent Capital LLC (a Minnesota company), and John H. Mason (together, the "Convergent defendants"). The motions came on for hearing before this court on April 17, 2013. Plaintiffs Anthony Kiehn and Fortis Pacific, Inc. ("plaintiffs") appeared through their counsel, Norbert Stahl. The Stein defendants appeared through their counsel, Peter Webster and E. Sean McLoughlin. The Convergent defendants appeared through their counsel, Wallace Hike. Having read the papers filed in conjunction with the motions and carefully considered the arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

    This case arises out of a dispute between two founders of a private equity investment firm. In 2006, plaintiff Kiehn and defendant Stein founded a firm called "Blackford Capital Associates, LLC" (which the parties call "Blackford One"). Kiehn and

Stein formed the firm through an operating agreement, which specifies that "[i]n any dispute over the provisions of this agreement and in other disputes among the members," the matter "shall be submitted to mediation," and "[i]f good-faith mediation of a dispute proves impossible or if an agreed-upon mediation outcome cannot be obtained by the members who are parties to the dispute, the disputes shall be settled by binding arbitration." Dkt. 30-1 at 31-32.

Over time, the relationship between Kiehn and Stein began to break down. In May 2010, Stein formed his own private equity firm called "Blackford Capital Associates II, Inc." ("Blackford Two"). Kiehn has no involvement with Blackford Two. Kiehn alleges that Stein used Blackford Two as a vehicle to misappropriate business opportunities that rightfully belonged to Blackford One, so that Stein (as the sole owner of Blackford Two) could avoid sharing profits with Kiehn. Kiehn also alleges, more generally, that Stein has not cooperated in the management of Blackford One and that Stein has made disparaging comments about him, causing harm to Kiehn.

After it became clear that they would no longer be able to work together, Kiehn and Stein went to mediation. They were unable to resolve their differences, and instead of going to arbitration, Kiehn filed suit in this court on December 28, 2012. He brings claims on behalf of himself and on behalf of his company, Fortis Pacific, Inc., which he alleges was also harmed by the actions of Stein and Blackford Two. In addition to the Stein defendants, plaintiffs also assert claims against the Convergent defendants, alleging that they "aided and assisted" the Stein defendants. After the Stein defendants filed a motion to dismiss, plaintiffs filed a first amended complaint ("FAC") as a matter of right under Rule 15. The FAC, which is the operative complaint, asserts twelve causes of action against the various defendants: (1) unfair competition under the Lanham Act (by both plaintiffs against all defendants); (2) unfair competition under Cal. Bus. & Prof. Code § 17200 (by both plaintiffs against all defendants); (3) breach of contract (by Kiehn against Stein); (4) conversion (by Kiehn against Stein and Blackford Two); (5) concealment (by Kiehn against Stein and Blackford Two); (6) breach of fiduciary duty (by Kiehn against Stein and Blackford Two); (7)

breach of the covenant of good faith and fair dealing (by Kiehn against Stein); (8) defamation (by both plaintiffs against all defendants); (9) intentional interference with prospective economic advantage (by both plaintiffs against all defendants); (10) negligent interference with prospective economic advantage (by both plaintiffs against all defendants); (11) intentional interference with contractual relations (by both plaintiffs against all defendants); and (12) conspiracy (by both plaintiffs against all defendants).

As stated above, the Stein defendants have filed a motion to compel arbitration, citing Blackford One's operating agreement, and arguing that plaintiffs' claims fall within the scope of "any dispute over the provisions of this agreement and in other disputes among the members." Plaintiffs respond by arguing that only signatories to the operating agreement (i.e., only Kiehn and Stein) are bound to the arbitration provision, and that the non-signatory plaintiff and non-signatory defendants cannot be compelled to arbitration.

As an initial matter, plaintiffs do admit that any claim brought by Kiehn against Stein is subject to the arbitration provision. In fact, under the operating agreement, Stein has a contractual right to have all of Kiehn's claims against him resolved through arbitration, and plaintiffs present no reason why, as to those claims, the arbitration provision should not be enforced. Thus, as to the twelve causes of action brought by plaintiff Kiehn against defendant Stein, the motion to compel arbitration is GRANTED.

The court further finds that all claims brought by Kiehn against Blackford Two are derivative of Kiehn's claims against Stein. In the FAC, all allegations against Blackford Two consist of actions taken by Stein. In essence, it appears that Blackford Two was merely a vehicle for Stein to perform the acts alleged by plaintiffs. For that reason, the court finds that the principles of equitable estoppel require Kiehn's claims against Blackford Two to be resolved through arbitration. Even though plaintiffs are correct that Blackford Two is not a signatory to the operating agreement, arbitration between Kiehn and Blackford Two may be compelled because of "the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual

obligations." Mundi v. Union Sec. Life Ins. Co., 555 F.3d 1042, 1046 (9th Cir. 2009) (quoting E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediaries, 269 F.3d 187, 201 (3rd Cir. 2001)). In this case, Stein and Blackford Two do have the required "close relationship," as Stein is the sole owner of Blackford Two and all allegations against Blackford Two are based on Stein's conduct. And for that same reason, all claims against Blackford Two are intertwined with the contractual obligations of Stein. Thus, as to the ten causes of action brought by Kiehn against defendant Blackford Two, the motion to compel arbitration is GRANTED.

Thus, all claims asserted by Kiehn against either of the Stein defendants must be resolved through arbitration, and the claims are DISMISSED with prejudice.

The only remaining claims asserted against the Stein defendants are those brought by plaintiff Fortis Pacific, Inc. ("Fortis"). The court finds that, as currently pled, all claims brought by Fortis are derivative of those claims brought by Kiehn. There is no claim brought by Fortis that is not also brought by Kiehn, and indeed, the only alleged harm to Fortis is the same harm alleged to Kiehn, imputed to Fortis by virtue of the close relationship between the two plaintiffs (Kiehn is the sole owner of Fortis). For example, plaintiffs' first cause of action alleges that "Stein has made false and misleading statements in interstate commerce about Fortis to investors by suggesting that Fortis' executive, Kiehn, has not managed investments and companies properly." FAC, ¶ 134. Plaintiffs' other causes of action are similarly pled. See, e.g., FAC ¶¶ 194, 200, 207. Thus, to the extent that Fortis' claims against the Stein defendants and the harm caused to Fortis are identical to Kiehn's claims against those same defendants and the harm caused to Kiehn, those claims will be resolved through arbitration, and they are DISMISSED with prejudice. Because Fortis is not a signatory to the operating agreement, it will not be compelled to arbitrate any independent claims that it may have against the Stein defendants. Instead, Fortis will be given an opportunity to file an amended complaint, to attempt to state independent claims against the Stein defendants.

Now that the claims against the Stein defendants have been addressed, the only

4

claims remaining in the case are those asserted against the Convergent defendants. In general, it appears that all claims against the Convergent defendants are derivative of the claims against the Stein defendants. For instance, plaintiffs allege that the Convergent defendants "worked with Stein and Blackford Two" in a certain financing transaction, and otherwise "would not have realized the increase in their stake." In other words, plaintiffs allege that, because the Convergent defendants worked with Stein, and because they profited from that association, they are liable to plaintiffs. However, plaintiffs point to no duty or obligation owed by the Convergent defendants to plaintiffs that would prevent them from doing business with Stein, nor do plaintiffs identify any "aiding and abetting" theory on which to hold the Convergent defendants liable for Stein's alleged breach of his contractual duties to Kiehn. Thus, plaintiffs cannot state a claim against the Convergent defendants simply by pointing to the conduct of Stein.

The only independent conduct alleged against the Convergent defendants consists of statements made by defendant John Mason. Plaintiffs allege that Mason "misrepresented a financing that Kiehn had arranged" by making this statement: "I find this approach of signing term sheets, putting it mildly extremely inappropriate and unprofessional from everyone involved." FAC, ¶ 117. Plaintiffs also allege that Mason "stated that he did not feel comfortable with his money in the deal with you [Kiehn] remaining as the chairman." Id., ¶ 114. Neither of these allegations are enough to state a claim against Mason, let alone against the remaining Convergent defendants. The latter statement merely shows that Mason did not want to work with Kiehn, which is hardly actionable under any legal theory. The other statement, described by Kiehn as a "false and misleading statement," contains no statement of fact that would give rise to a defamation or Lanham Act claim. Instead, "extremely inappropriate" and "unprofessional" are expressions of opinion, and thus not actionable. Thus, because none of plaintiffs' allegations against the Convergent defendants are sufficient to state a claim, the Convergent defendants' motion to dismiss is GRANTED. Even though the court notes that plaintiffs have already had one opportunity to amend their claims against the Convergent defendants, and even

though the court finds it likely that the Convergent defendants were only included in this suit so that plaintiffs could attempt to avoid arbitration, the court will allow plaintiffs one final opportunity to amend their claims against the Convergent defendants.

Plaintiffs may file an amended complaint by **May 17, 2013**.  In accordance with this order, plaintiff Fortis may assert claims against the Stein defendants, and plaintiffs Kiehn and Fortis may assert claims against the Convergent defendants.  No new claims or parties may be added without leave of court.  Defendants shall have until **June 7, 2013** to answer or otherwise respond to the amended complaint.  The court will not likely hold any further hearings on the pleadings.

**IT IS SO ORDERED.**

Dated: April 26, 2013

_____
PHYLLIS J. HAMILTON
United States District Judge